# T. R. SPROAT v. DIRECTORS OF THE POOR.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
OF GREENE COUNTY.

Argued October 6, 1891—Decided January 4, 1892.

1. Where a dog, guilty of killing sheep, was brought upon the farm of the directors of the poor, etc., by a little son of the steward, without authority, and afterward maintained on the farm and left there when the steward was succeeded by another, the ownership of the dog did not thereby become vested in the poor district.

2. Though a point for instruction that the facts in evidence were insufficient to establish the defendant's ownership of the dog was correctly affirmed, yet, the trial judge having added a qualification the effect of which was to leave the question of the sufficiency to the jury, the judgment should be reversed.

Charge of Court below.

3. The directors of the poor are public officers, charged with the disbursement of public moneys for the support of the poor. Whether the funds of such a charity may be diverted to pay damages for the neglect or tortious act of an employee, not raised on the record: See Insurance Patrol v. Boyd, 120 Pa. 624; Ford v. School D., 121 Pa. 543.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 3 October Term 1891, Sup. Ct.; court below, No. 178 October Term 1889, C. P.

On September 13, 1889, T. R. Sproat brought trespass against "The Directors of the Poor and of the House of Employment for the county of Greene." Issue.

At the trial, on February 11, 1890, it was shown that the defendants were a body corporate, under the provisions of the act of April 13, 1859, P. L. 580, and its supplement, act of March 18, 1864, P. L. 65; that about January 1, 1886, one Adam Gordon became the steward of the poor farm, killed off a lot of dogs thereon, and shortly thereafter a neighbor gave to his little boy a shepherd pup a few weeks old; that "this pup was raised at the poor-house, was fed out of the provisions of the county, slept in the poor-house, followed the steward, the employees and paupers indiscriminately everywhere, was used to chase the vagrant cattle and hogs from the fields and roads adjacent, as well as to gather together the county cattle when needed, and was made generally useful about the premises," becoming well known as the "poor-house dog;" that, in March, 1888, Gordon was succeeded by one Cage as steward, and removed from the poor farm but left the dog behind; that, on the night of March 4, 1889, T. R. Sproat, the plaintiff, owning a farm adjoining the poor farm, had a number of sheep killed and a number wounded, and upon satisfactory evidence the said poor-house dog was found guilty of the trespass and was himself killed. To recover damages, the plaintiff brought this suit. The defendants denied all ownership of the dog, as matter of fact, and, as matter of law, that they had any right to own a dog.

The court, INGHRAM, P. J., submitted the case to the jury on the testimony, and answered certain points for instruction as follows:

Charge of Court below.

The plaintiff requests the court to charge:

1. That it was not ultra vires, i. e., beyond their authority, for the poor authorities of the county to purchase or otherwise procure and raise a dog for the poor farm, if such authorities in the exercise of a reasonable judgment deemed a dog necessary for the use of such farm and premises.

Answer: That point is correct and is affirmed.[7]

2. It is a question of fact for the jury as to the ownership of the dog that killed the plaintiff's sheep; and if the jury believe from the evidence in the case, that the dog belonged to the poor authorities of the county, then their verdict should be for the plaintiff, for such damages as they find the plaintiff has sustained by reason of the trespass of such dog.*

Answer: That point is correct and is affirmed.[8]

3. The defendant corporation having authority to purchase, raise and own horses, cattle, and other stock necessary for the convenient and profitable management of the poor farm and premises, are to be held responsible for the trespasses of such stock.

Answer: That point is correct and is affirmed.[9]

4. If the jury believe that Adam Gordon, the steward of the poor-house, had the authority to and did raise a dog for the use of the farm, and as the property of the poor authorities, and that when he removed from the farm he left such dog upon the farm where it belonged, the poor authorities could not afterwards dispossess themselves of such ownership by driving the dog away from the premises.

Answer: That point is correct and is affirmed.[10]

5. If the jury believe that Adam Gordon, the steward and employee of the poor authorities of the county, had the power and authority from the poor directors to procure and raise such stock and other articles as were necessary for the successful management of the poor farm, and if such steward, in good faith believed that a dog was necessary to have there, and he in good faith raised a dog on the premises from a pup, fed him from the county provisions, used him in every respect as the county property and for the use of the county, and left him there when he removed from the property, such a dog was in

---

*See §§ 7, 8 act of April 14, 1851, P. L. [1852] 712.

fact the property of the poor authorities of the county, and they are liable for the trespasses of such property.

Answer: .That point is correct and is affirmed.[11]

6. If the jury believe that the dog that killed the plaintiff's sheep was raised from a pup by the steward of the poor-house, at the poor farm, that he was fed from the county provisions, that he was used for the purposes of the farm and premises, that he was kept in good faith for the purposes of the farm, that he was believed by the steward to be necessary at such farm, that such steward left him at the poor farm as their property when he removed therefrom, as other property of the poor authorities was left, the defendant county being liable for the trespasses of its stock, is liable to the plaintiff for the damages done by the dog, and the verdict should be for the plaintiff.

Answer: This point is correct and is affirmed with this qualification : Provided you find that the steward of the poor farm, in procuring or obtaining this pup and raising him there, was doing it under the direction of the poor directors of the county, or that they knew it and acquiesced in it.   With that qualification the point is affirmed.[12]

The defendants request the court to charge :

1. If the defendant corporation was not the owner of the dog that killed the plaintiff's sheep, the plaintiff cannot recover in this action.

Answer: That point is correct and is affirmed.

2. The dog having been brought to the poor-house by the steward's son, without authority from the directors, or from his father, the defendant corporation did not become its owner, merely because the steward, believing a dog to be necessary, determined to consider the dog in question as the property of the defendant corporation, there being no evidence that he ever communicated that fact to the directors, or that they acquiesced in what he had done.

Answer: That point is correct and is affirmed with this qualification : That we leave it with you to determine from the evidence in the case whether the directors did acquiesce in what the steward had done, after it was done, or whether they authorized it or directed it prior to the time it was done ; in other words, whether they gave him authority to purchase

Charge of Court below.

or procure a dog, or whether they acquiesced in it after it was done. With that qualification the point is correct and is affirmed.[1]

3. The steward having killed the dogs he found on the premises when he went there, and the dog in question having been brought to the poor-house in which the steward and his family resided, by the steward's minor son, the presumption is that said dog was the property of the steward or his son; and the ownership of the dog could not be transferred to defendant corporation without the consent and acquiescence of the directors, and of such consent and acquiescence there is no evidence.

Answer: That point is correct and is affirmed; that is, if the dog was brought there by the son of the steward without authority from the directors, then the dog could not be transferred to the defendant corporation without the consent and acquiescence of the directors. But whether there is any evidence of their consent or acquiescence, we leave you to determine from the evidence. With that qualification, the point is correct and is affirmed.[2]

4. As the steward with his family lived in the poor-house, and as the dog was brought there by the steward's son, who was a member of his family, the fact that the dog remained there a long time is no evidence of the ownership by the defendant corporation.

Answer: We answer that point in this way: The fact that the dog remained there a long time does not make it the dog of the defendant corporation; but the fact that he did remain there a long time may be taken into consideration by the jury, along with the other evidence in the case, in determining the ownership of the dog.[3]

7. Adam Gordon, as steward of the defendant corporation, had no authority to make said corporation the owner of the dog in controversy; and there is no evidence that he had any special authority to do so.

Answer: Our answer to that point is as follows: Adam Gordon, as steward of the defendant corporation had no authority by virtue of his office to make the said corporation the owner of a dog; that is, he must have had authority from them besides the mere fact that he was steward of the poor-house. If he had no such authority, then his act in procuring or obtain-

ing this dog would not be binding upon the directors ; but
whether there is evidence of his having this authority, we leave
for the jury to determine. That is our answer to the defend-
ant's seventh point.[4]

8. The acquisition of ownership of the dog in controversy by
the defendant corporation would be ultra vires, and said corpo-
ration would not be liable to the plaintiff for any injury caused
by said dog.

Answer: Refused.[5]

9. Upon all the evidence in the case, the verdict should.be
for the defendant.

Answer: Refused.[6]

—The jury returned a verdict in favor of the plaintiff for
$152. A rule for a new trial having been discharged and judg-
ment entered, the defendants took this appeal, assigning for
error :

1–6. The answers to the defendants' points.[1 to 6]

7–12. The answers to the plaintiff's points.[7 to 12]


*Mr. J. A. J. Buchanan* (with him *Mr. Geo. L. Wyly* and *Mr.
D. S. Walton*), for the appellants.

*Mr. R. F. Downey*, for the appellee.


OPINION, MR. JUSTICE WILLIAMS :

The several poor districts in the county of Greene were con-
solidated by the act of April 13, 1859, P. L. 580, and the care
of the poor throughout the county committed to three direc-
tors. These officers are elected by the voters of the county,
hold their offices for three years, and settle their accounts an-
nually before the county auditors, like other county officers.
The county almshouse under their care is called the House of
Employment, and they are authorized to appoint a steward
and matron to take the immediate care of the building and its
inmates, under the general direction of the directors. The
funds necessary for the support of the poor are provided in
the following manner: The directors make each year an esti-
mate of the amount needed for the ensuing year, and furnish
the same to the county commissioners, who are required by
the act of 1859 to levy and collect the sum in taxes, and pay it

over to the directors. It is disbursed from their treasury. The directors are public officers, charged with the disbursement of public moneys, for the specific purpose of the support of the poor. Whether the funds of a public charity may be diverted from the purpose for which they were raised, to pay for the neglect or tortious act of an officer or employee charged with their care, is a question not raised on this record, and for that reason we do not discuss it. It has been fully considered in some recent cases, among which are Insurance Patrol v. Boyd, 120 Pa. 624; Ford v. School Dist., 121 Pa. 543.

The question on which this case turned, in the court below, was that of the ownership of a dog which had killed some of the plaintiff's sheep. The testimony showed that the dog had not been bought by the directors of the poor, or by the steward, but that it had been given by a neighbor to the steward's little son. It had, of course, lived in the family of the steward, and under the roof of the house of employment. The theory of the plaintiff was that the dog had become the property of the directors of the poor, because it had remained at the house of employment during most of the term of its little master's father as steward, and because, when the steward moved away from the county farm, he left the dog behind him. The defendants denied the ownership of the dog, and requested the court to charge that " the dog having been brought to the poor-house by the steward's son without authority from the directors or from his father, the defendant corporation did not become its owner merely because the steward, believing a dog to be necessary, determined to consider the dog in question as the property of the defendant, there being no evidence that he ever communicated that fact to the directors, or that they acquiesced in what he had done." This point the court affirmed, and if the answer had ended with the affirmance, that would have ended the case. But the learned judge added: " We leave it to you to determine from the evidence in the case whether the directors did acquiesce in what the steward had done, after it was done, or whether they authorized it or directed it prior to the time it was done."

The point grouped the facts fairly as they appeared in the evidence, and asked the learned judge to pronounce upon their legal effect. This he did, affirming the proposition embodied in

the point that the facts did not show a title in the poor district. Having thus declared the facts insufficient as matter of law to sustain the plaintiff's position, he proceeded to submit the question of their sufficiency to the jury.   There were no other acts or declarations of the directors or of the steward affecting their ownership of the dog than those enumerated in the point. There was therefore no evidence to submit to the jury from which either authority or acquiescence could be found, except that which the learned judge had just declared, as matter of law, to be insufficient for that purpose.   There was, to be sure, the circumstance that, after the dog was given to the steward's son, it remained with the steward's family until the close of his term, which was about two years.   Although this was fully covered by the point which we have just considered, the defendants made it the subject of another, and asked the court to tell the jury that the fact that the dog was at the house of employment with its little master for a long time, did not give, or tend to give title to the poor district.   This was affirmed, but with a similar qualification.   The jury were told that the fact that the dog did so remain at the house of employment might be considered by the jury in determining the question of ownership.   Thus, from evidence which the court held insufficient to show ownership, the jury were told, in substance, that they might nevertheless find that the poor district owned the dog, which they promptly did.

Both points were entitled to an unqualified affirmance, unless there was evidence before the jury that has not been brought before us.   If there was such evidence, after an affirmance of the points in the manner we have seen, the attention of the jury should have been called to it, so that they might be able to see from what, authority or acquiescence might be found by them. We cannot say that the directors were bound to take official notice of the appearance of the dog in the steward's household, and eject him from the house of employment vi et armis, nor that their failure to do so has drawn the title of the steward or his son, by a process entirely unconscious and involuntary, to the poor district of Greene county.   It is not alleged that they ever did or said anything looking to the purchase or acquisition of the dog in any manner; and, as we do not think they acquired title by their failure to banish him from the poor-house,

or to take notice of his presence, we see no escape from the conclusion that the jury were permitted to find a previous authority, or subsequent ratification and acquiescence, from evidence which the learned judge had properly pronounced insufficient.

The second, third, fourth, fifth, eleventh and twelfth assignments of error are sustained. As this is conclusive of the plaintiff's right to recover, a discussion of the powers of the directors is unnecessary.

The judgment is reversed.